# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:11-CV-00008-PPS-CAN |
| | ) | |
| WESTERN REMAN INDUSTRIAL INC., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The government brought this action, on behalf of the Administrator of the United States Air Force, against defendant Western Reman Industrial Inc., pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9607 [DE 1]. On January 10, 2011, the government filed a proposed consent decree with the Court [DE 2]. Before the Court is the government's unopposed motion to enter the proposed consent decree [DE 3], along with its brief in support of the motion [DE 4].

## BACKGROUND

The site giving rise to the government's CERCLA action is the Building 190 site located at 175 North Hoosier Boulevard, Peru, Indiana (the "Site") [DE 1, ¶ 7]. The Air Force owned and operated the site until 1999 [*Id.*, ¶ 9]. In 1992, the Air Force Real Property Agency ("Agency") leased the Site to Grissom Redevelopment Authority, which in turn leased it to defendant Western Reman [*Id.*, ¶¶ 10-11]. Western Reman operated the Site from July 1996 to October 2004 [*Id.*, ¶ 12].

Following an anonymous report regarding contamination at the Site, the Agency

1

conducted a remedial investigation, from April 2003 through November 2004, which revealed a number of substances in the groundwater that CERCLA defines as hazardous [*Id*., ¶¶ 15-16]. In August 2005, the Agency conducted an interim removal action to remove the contaminated soil [*Id*., ¶ 17]. And in April 2007, the Agency selected a remedy for the Site, pursuant to which the Air Force continues to incur response costs, in part as a result of the continued release of hazardous substances at the Site [*Id*., ¶¶ 18-19].

Pursuant to the proposed consent decree, Western Reman will pay $300,000 to the government in reimbursement for past and future response costs [DE 2-1, ¶ 4]. In consideration for this, the government has agreed not to sue Western Reman for certain claims under CERCLA [*Id*., ¶ 13]. Also under the proposed consent decree, Western Reman agrees not to sue the government with respect to response costs incurred in connection with the Site or the consent decree [*Id*., ¶ 15]. Moreover, the proposed consent decree grants Western Reman protection from contribution actions or third-party claims concerning response actions and response costs incurred under the consent decree [*Id*., ¶ 18].

On January 10, 2011, the government published notice of the consent decree in the Federal Register and solicited public comment concerning the settlement [DE 2]. *See* 76 Fed. Reg. 2922-02 (January 18, 2011). No public comments were received in connection with the notice [DE 4 at 4].

Additional facts will be included, as relevant, in the discussion section of this decision.

## DISCUSSION

Approval of a consent decree is a judicial act that is committed to the sound discretion of the district court. *Madison County Jail Inmates v. Thompson*, 773 F.2d 834, 845 (7th Cir. 1985);

*see also U.S. v. BP Amoco Oil PLC*, 277 F.3d 1012, 1019 (8th Cir. 2002), *cert. denied*, 537 U.S. 942 (2002). Courts, however, should exercise this discretion in a limited and deferential manner, as the fairness of a settlement is "a matter best left to the negotiation between the parties." *Mars Steel Corp. v. Cont'l Illinois Nat'l Bank and Trust Co. of Chicago*, 834 F.2d 677, 681 (7th Cir. 1987).

Public policy strongly favors settlements of disputes without litigation. *Donovan v. Robbins*, 752 F.2d 1170, 1177 (7th Cir. 1985); *Metro. Housing Dev. Corp. v. Vill. of Arlington*, 616 F.2d 1006, 1013 (7th Cir. 1980); *U.S. v. BP Oil Exploration & Oil Co.*, 167 F. Supp. 2d 1045, 1050 (N.D. Ind. 2001). "[T]he limitations of judicial competence and the desirability of encouraging out-of-court settlements in order to lighten the judicial caseload create a presumption in favor of approving the settlement." *Donovan*, 752 F.2d at 1177. That policy is particularly strong where, as here, a government actor committed to the protection of the public interest has constructed the proposed settlement. *See U.S. v. George A. Whiting Paper Co.*, No. 10-2480,--- F.3d ----, 2011 WL 1662833, at *2 (7th Cir. May 4, 2011) (in reviewing a consent decree, "the trial court must defer to the expertise of the agency and to the federal policy encouraging settlement"); *U.S. v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990).

In reviewing CERCLA consent decrees, in particular, courts determine "not whether the settlement is one which the court itself might have fashioned, or considers as ideal, but whether the proposed decree is fair, reasonable, and faithful to the objectives of the governing statute." *Cannons Eng'g Corp.*, 899 F.2d at 84; *see also U.S. v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1435 (6th Cir. 1991).

Thus, in evaluating whether to approve a consent decree settlement, courts consider the

following three factors: (1) fairness, both procedural and substantive; (2) reasonableness, and (3) consistency with applicable law. *George A. Whiting Paper Co.*, 2011 WL 1662833, at *2; *In re Tutu Water Wells CERCLA Litig.*, 326 F.3d 201, 207 (3rd Cir. 2003).

I find that the proposed consent decree satisfies each of these criteria.

## I. Procedural Fairness

A consent decree is procedurally fair if the negotiations in reaching the settlement were open and at arms-length. *In re Tutu*, 326 F.3d at 207 ("A court should 'look to the negotiation process and attempt to gauge its candor, openness and bargaining balance.'") (quoting *Cannons Eng'g Corp.*, 899 F.2d at 86); *BP Amoco Oil*, 277 F.3d at 1020; *U.S. v. Davis*, 261 F.3d 1, 23 (1st Cir. 2001).

I find that the proposed consent decree was procedurally fair because, as the government asserts, it results from "several years of arms-length negotiations" [DE 4 at 5]. Moreover, the proposed consent decree was noticed in the Federal Register for a 30-day period, during which public comments were solicited. *See* 76 Fed. Reg. 2922-02 (January 18, 2011). Copies of the proposed consent decree were made available by mail, and at the following Department of Justice website: http://www.usdoj.gov/enrd/Consent-Decrees.html. *Id.*

Significantly, the Department of Justice received no public comments, and no objections have been filed with the Court. Moreover, the record contains no evidence that the negotiations were conducted in bad faith or that the proposed consent decree was the product of collusion. Considering these factors, I find that the proposed consent decree is procedurally fair. *Cf. BP Oil Exploration & Oil Co.*, 167 F. Supp. 2d at 1050 (finding procedural fairness satisfied where nothing in the record indicated bad faith or collusion and commenters had withdrawn previous

4

objections).

## II. Substantive Fairness

A consent decree is substantively fair if its terms are based on comparative fault. *George A. Whiting Paper Co.*, 2011 WL 1662833, at *2; *Tutu Wells*, 326 F.3d at 207; *Cannons Eng'g*, 899 F.2d at 87 ("a party should bear the cost of the harm for which it is legally responsible"). The calculation of comparative fault "should be upheld unless it is arbitrary, capricious, and devoid of a rational basis." *Cannons Eng'g*, 899 F.2d at 87.

I fund that the proposed consent decree is substantively fair because the parties share responsibility for the Site [DE 4 at 6]. And, as the government asserts, Western Reman's negotiated payment of $300,000, and the government's corresponding obligation to continue to perform the required remediation work, reflects the relative fault of the parties [*Id.*]. *Cf. In re Tutu*, 326 F.3d at 207 ("As long as the measure of comparative fault on which the settlement terms are based is not arbitrary, capricious, and devoid of a rational basis, the district court should uphold it.") (citation and quotations omitted).

## III. Reasonableness

The evaluation of a consent decree's reasonableness is "a multifaceted exercise." *Cannons Eng'g*, 899 F.2d at 89. Factors relevant to the evaluation of a consent decree's reasonableness include its likely efficaciousness as a vehicle for cleansing the environment; the extent to which it satisfactorily compensates the public for actual and anticipated costs of remedial and response measures; the extent to which approval of it serves the public interest; and the availability and likelihood of alternatives to the consent decree. *Id.* at 89-90; *see also U.S. v. Fort James Operating Co.*, 313 F. Supp. 2d 902, 910 (E.D. Wis. 2004); *BP Exploration & Oil*,

167 F. Supp. 2d at 1053.

Based on a consideration of these factors, I find that the proposed consent decree is reasonable. Under it, the government will implement the selected remedy at the Site, and continue to implement the remedy selected for the Site, including by continuing to ensure that the Site meets clean-up criteria. This serves the public interest by protecting public health and the environment, and ensures that the proposed decree is likely to be an effective vehicle for cleansing the environment [DE 4 at 6-7]. Because the government has already begun remediation work, litigation—the likeliest alternative to settlement here—would only create additional expense for the parties [*Id.*]. And the government will also recover a portion of its response costs from Western Reman [*Id.*], which also serves the public interest. The fact that no public comments or objections were received during the 30-day notice period further indicates that the proposed consent decree serves the public interest.

## IV.     Consistency with CERCLA

In evaluating the proposed consent decree's consistency with CERCLA, I consider the extent to which it comports with the goals of Congress. *See BP Exploration & Oil*, 167 F. Supp. 2d at 1054. "Of necessity, consideration of the extent to which consent decrees are consistent with Congress' discerned intent involves matters implicating fairness and reasonableness" and "cannot be viewed in majestic isolation." *Cannons Eng'g*, 899 F.2d at 90.

The purpose of CERCLA is (1) to "abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites," and (2) to "shift the costs of cleanup to the parties responsible for the contamination." *Metro. Water Reclamation Dist. v. North Am. Galvanizing & Coatings, Inc.*, 473 F.3d 824, 827 (7th Cir. 2007); *see also Burlington Northern*

*and Santa Fe Ry. Co. v. U.S.*, 129 S. Ct. 1870, 1874 (2009) ("[CERCLA] was designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination.") (citations and quotation marks omitted).

I find that the proposed consent decree advances both of these goals. It provides that Western Reman shall reimburse the government for past and future response costs, thereby assisting the government in controlling the clean-up problems at the Site, while shifting a portion of the cost to Western Reman that is commensurate with its share of the responsibility for the contamination.

**CONCLUSION**

For the foregoing reasons, I find that the proposed consent decree is fair, reasonable and consistent with CERCLA's statutory purposes. Therefore, the government's unopposed motion to enter the proposed consent decree [DE 3] is **GRANTED**. Accordingly, the Court accepts and enters the government's proposed consent decree [DE 2-1] and the appendix thereto [DE 2-2] as an order of the Court. The Clerk is **INSTRUCTED** to **ENTER** these filings [DE 2-1 & DE 2-2] as the parties' Consent Decree in this matter. The Consent Decree will be entered and effective as of the date of this order.

**SO ORDERED.**

ENTERED: May 27, 2011

s/ Philip P. Simon.
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
